1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

ELI BICKERTON, individually and on behalf of all others similarly situated,

        Plaintiff,

   v.

HYATT CORPORATION, a Delaware corporation, HYATT CORPORATION DBA HYATT OLIVE 8, a Delaware corporation, HYATT CORPORATION DBA GRAND HYATT SEATTLE, a Delaware corporation, and DOES 1-10, inclusive,

        Defendant.

Case No. 2:20-cv-00397

**NOTICE OF REMOVAL**

TO:      THE CLERK OF THE COURT

AND TO:   PLAINTIFF THROUGH HIS COUNSEL OF RECORD

**PLEASE TAKE NOTICE** that, for the reasons set forth below, Defendant Hyatt Corporation ("Defendant" or "Hyatt"), through its undersigned counsel, hereby remove the above-captioned action from the Superior Court of the State of Washington in and for the County of King at Seattle to the United States District Court for the Western District of Washington. This Notice of Removal is filed pursuant to 28 U.S.C. §§ 1332(d), 1441(b), and 1446 and Western District of Washington Civil Rule 101. In support of its removal of this action, Hyatt states as follows:

NOTICE OF REMOVAL - 1

**BACKGROUND**

1. On or about February 11, 2020, Plaintiff Eli Bickerton filed this lawsuit in the Superior Court of the State of Washington in and for the County of King at Seattle, Case No. 20-2-03711-7 SEA against defendant Hyatt Corporation dba Hyatt Olive 8 and dba Grand Hyatt Seattle. A copy of Plaintiff's state court complaint (the "Complaint") is attached hereto as **Exhibit A**.

2. The Complaint alleges four causes of action on an individual behalf and on behalf of a putative class of current and former employees: (1) failure to pay Seattle Minimum Wages in violation of RCW 49.46.020, 120 and SMC 14.19, *et seq.*; (2) implied cause of action pursuant to RCW 49.12 for failure to compensate for missed meal and rest periods; (3) violations of Seattle Municipal Code ("SMC") 14.20.020 for failure to pay wages due at established pay periods flowing from causes of action one and two; and (4) double damages for willful and intentional withholding of wages pursuant to RCW 49.52.050, 070 flowing from causes of action one and two.

**REMOVAL OF THIS ACTION IS APPROPRIATE UNDER CAFA**

3. This Court has original jurisdiction of this action under the Class Action Fairness Act ("CAFA"), codified in pertinent part at 28 U.S.C. section 1332(d)(2). CAFA grants federal courts original jurisdiction over, and permits removal of, class actions in which: (1) any member of a class of plaintiffs is a citizen of a state different from any defendant, thus establishing "minimal diversity"; (2) the aggregate number of proposed plaintiffs is 100 or more; (3) the primary defendants are not States, State officials, or other governmental entities; and (4) the aggregate amount in controversy of all of the putative class members' claims exceeds $5,000,000. *See* 28 U.S.C. § 1332(d). As set forth below, this putative class action is removable under CAFA.

NOTICE OF REMOVAL - 2

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue, Ste. 3000
Seattle, WA 98104
(206) 946-4910

A.  **VENUE IS APPROPRIATE**

4.  Venue lies in the United States District Court for the Western District of Washington pursuant to 28 U.S.C. sections 1441, 1446(a), and 84(a).  This action originally was brought in the Superior Court of the State of Washington in and for the County of King at Seattle, which is located within the Western District.  Therefore, the action is properly removed to this Court because it is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

B.  **THE TIMELINESS OF REMOVAL**

5.  On February 11, 2020, Hyatt was served with the Summons and Complaint filed by Plaintiff, through its registered agent for service of process.  (Declaration of Analisa Padilla filed in Support of Notice of Removal ("*Padilla Decl.*") at ¶ 7.)  A true and correct copy of the Notice of Service of Process, showing an February 11, 2020 service date is attached hereto as **Exhibit B**.  This Notice of Removal is filed within thirty days of service of process on Hyatt and is therefore timely under 28 U.S.C. § 1446.

6.  In addition, pursuant to CAFA, Hyatt does need not obtain the consent of any other defendant to remove this action.  *See* 28 U.S.C. § 1453(b).

C.  **THE PARTIES ARE SUFFICIENTLY DIVERSE**

7.  CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction; at least one purported class member must be a citizen of a state different from any named defendant.  28 U.S.C. § 1332(d)(2)(A).  Here, such minimal diversity exists among the parties.  Plaintiff is a citizen of a state (Washington State) different from that of Hyatt (Delaware and Illinois).

8.  **Plaintiff's Citizenship:** For purposes of determining diversity, a person is a "citizen" of the state in which they are domiciled.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983) ("To show state citizenship for diversity purposes under federal common law a party must . . . be domiciled in the state").  Residence is *prima facie* evidence of

NOTICE OF REMOVAL - 3

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue, Ste. 3000
Seattle, WA 98104
(206) 946-4910

domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("the place of residence is *prima facie* the domicile."). Domicile for purposes of diversity is determined as of the time the lawsuit is filed. *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).

9. Plaintiff alleges he was a resident of the State of Washington at all relevant times. (Cmplt. at ¶ 4.) Plaintiff also seeks to represent a class of current and former employees who reside in the State of Washington. (*Id.* at ¶ 13.)

10. Based on Defendant's records, throughout the period of his employment, Plaintiff has provided Hyatt a home address located in the State of Washington, and thus was a resident of the State of Washington. (Declaration of Helen M. McFarland ("*McFarland Decl.*"), at ¶ 5.) As of the date of this filing, Plaintiff remains employed as a current employee of Hyatt in Seattle, Washington. (*Id.*) Neither Plaintiff nor Plaintiff's counsel has provided a different address or indicated that Plaintiff does not remain domiciled in Washington. (McFarland Decl., at ¶ 4.)

11. **Hyatt's Citizenship:** For diversity purposes, a corporation is deemed to be a citizen of the state in which it has been incorporated and the state where it has a principal place of business. 28 U.S.C. § 1332(d)(1).

12. Plaintiff names Hyatt as the defendant to this action, and names two individual hotels of Hyatt "doing business as" Hyatt Olive 8 and Grand Hyatt Seattle. (Cmplt. at ¶5). Plaintiff does not allege these hotels are separate corporations of Hyatt and it is undisputed neither of these hotels are citizens of Washington.

13. Plaintiff correctly alleges that Hyatt is a Delaware corporation and is headquartered in Chicago, Illinois. (Cmplt. at ¶ 5.)

14. At the time of the filing of this action, and at all relevant times, Hyatt has been a citizen of a state other than Washington within the meaning of 28 U.S.C. section 1332. (Padilla Decl., ¶¶ 5-6.) Hyatt is now, and ever since this action commenced has been, incorporated under the laws of the State of Delaware, and therefore, is a citizen of the State of Delaware. (Padilla Decl., ¶ 5.) Hyatt's principal place of business and corporate headquarters are located in

NOTICE OF REMOVAL - 4

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue, Ste. 3000
Seattle, WA 98104
(206) 946-4910

Chicago, Illinois. (*Id.* at ¶ 6.) The leadership of Hyatt and major executive and administrative operations for Hyatt are found in Chicago, Illinois, which is where the President/CEO and other corporate leaders have their offices and spend most of their working time. (*Id.*) The core executive and administrative functions for Hyatt are carried out in Chicago, Illinois. (*Id.*) Hyatt's overall executive and administrative functions are not found in the State of Washington. (*Id.*) Accordingly, Hyatt has been, at all relevant times, a citizen of the States of Delaware and Illinois. *See Hertz Corp.*, 559 U.S. at 92. Hyatt is not now, and was not at the time of the filing of the Complaint, a citizen of the State of Washington.

15. Because Plaintiff is a resident of Washington and Hyatt is a citizen of Delaware and Illinois, the minimal diversity requirement under CAFA is satisfied.

**D.   THIS ACTION INVOLVES 100 OR MORE PUTATIVE CLASS MEMBERS**

16. "[U]nder CAFA, the jurisdictional allegations in the complaint can be taken as a sufficient basis, on their own, to resolve questions of jurisdiction where no party challenges the allegations." *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 886 (9th Cir. 2013).

17. Plaintiff purports to bring this case as a class action on behalf of "[a]ll individuals who resided in Washington State and were employed by Defendant in Seattle on an hourly basis, at any time from three years prior to the filing of the Complaint through the date of certification of the class by the Court…" (Cmplt. at ¶ 19.)

18. Plaintiff also purports to bring this case on behalf of a "Meal and Rest Period Subclass" defined as "[a]ll individuals who resided in Washington State, who were employed by Defendant in Seattle as an in-room server, server, (or any other similar 'front of the house' position) on an hourly basis, and who worked at least one shift of at least 4 hours in length, at any time from three years prior to the filing of the Complaint through the date of certification of the class by the Court…" (Cmplt. at ¶ 20.) The Complaint does not separately define the terms "in-room server," "server," or any other "front of the house" position he believes is similar.

NOTICE OF REMOVAL - 5

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue, Ste. 3000
Seattle, WA 98104
(206) 946-4910

19. Plaintiff alleges that, upon information and belief, there are at least 100 current and former employees in the Class and Subclass. (Cmplt. at ¶ 22.) Plaintiff also alleges that that, upon information and belief, Defendant "employed at least 100 servers, in-room servers, or similar 'front of the house' service staff that worked in Seattle, Washington. (Cmplt. at ¶ 13.)

20. Therefore, based on Plaintiff's allegations alone, the number of putative class members exceeds 100 persons (in both the Class and Subclass), as required by 28 U.S.C. section 1332(d)(5)(B).

21. Notwithstanding Plaintiff's allegations, during the alleged class period (beginning on February 11, 2017), Hyatt has employed roughly 1,695 non-exempt employees at its hotels in Seattle, Washington (Declaration of Kathleen McConnell ("*McConnell Decl.*"), ¶4), and thus the number of putative class members in fact easily exceeds CAFA's 100-person threshold.

**E.   THE AMOUNT IN CONTROVERSY MEETS THE CAFA THRESHOLD**

22. CAFA requires that the amount in controversy exceed $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. 28 U.S.C. § 1332(d)(6). In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42 (2005). As recently noted by the Ninth Circuit Court of Appeals, the Supreme Court has made clear that "no antiremoval presumption attends cases invoking CAFA." *Arias v. Residence Inn by Marriot*, 936 F.3d 920, 922 (9th Cir. 2019). Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. *Id*. at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of

NOTICE OF REMOVAL - 6

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue, Ste. 3000
Seattle, WA 98104
(206) 946-4910

exercising jurisdiction over the case…Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provision should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant").

23. While Hyatt specifically denies liability as to all of Plaintiff's claims, and specifically denies the appropriateness of the case proceeding as a class action, Hyatt has a reasonable, good faith belief that the amount in controversy, as alleged and pled by Plaintiff, exceeds $5,000,000. All calculations in support of the amount in controversy analysis are based on the allegations in Plaintiff's Complaint and are not intended as an admission that any of those allegations have merit.

24. Where, as here, damages are not specified in the state court complaint, the defendant's notice of removal "need not contain evidentiary submissions," but "only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 135 S. Ct. 547, 554 (2014) (citing 28 U.S.C. § 1446(a)). Because Plaintiff has not alleged his particular damages, reasonable estimates of the alleged amount in controversy are appropriate. *Arias*, 936 F.3d at 925 ("a removing defendant is permitted to rely on 'a chain of reasoning that includes assumptions'"; for example, an assumption "may be reasonable if it is founded on the allegations of the complaint") (quoting *Ibarra v. Manheim Inv.'s, Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015)).

25. In determining the amount in controversy, the Court must consider the recovery sought, including penalties, as well as recoverable statutory attorneys' fees. *Arias*, 936 F.3d at 927 (confirming "attorneys' fees awarded under fee-shifting statutes … are included in the amount in controversy") (quoting *Fritz v. Swift Transp. Co. of Ariz., LLC*, 899 F. 3d 785, 794 (9th Cir. 2018)); *see also Longmire v. HMS Host USA, Inc.*, 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA."); *Galt G/S v.*

NOTICE OF REMOVAL - 7

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue, Ste. 3000
Seattle, WA 98104
(206) 946-4910

*JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (finding that claims for statutory attorneys' fees should be included in amount in controversy, regardless of whether award is discretionary or mandatory). The burden of establishing the jurisdictional threshold "is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (internal quotations omitted); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("[T]he parties need not predict the trier of fact's eventual award with one hundred percent accuracy."). The amount in controversy is determined at the time of removal and is to be decided based on the allegations in the operative pleading. *Medrano v. Genco Supply Chain Solutions*, 2011 WL 92016, at *11 (E.D. Cal. 2011) (holding that, for purposes of removal, a court "must deal with what has actually been pled").

26.  The alleged amount in controversy in this action, in the aggregate, exceeds $5,000,000. Plaintiff's Complaint seeks relief on behalf of all current and former non-exempt employees of Hyatt in Seattle, Washington between February 11, 2017 and the present. (Cmplt. at ¶¶ 19-20.) During the time period identified in the Complaint (February 11, 2017 to the present day), Hyatt employed approximately 1,695 non-exempt employees at its hotels in Seattle, Washington. (McConnell Decl., ¶4.)[1]

27.  **Alleged Seattle Minimum Wage Violations**: Plaintiff alleges that he and the putative class members were paid less than the applicable Seattle Minimum Wage for all hours worked as established under SMC 14.19. (Cmplt. at ¶15, 25.) Plaintiff alleges Defendant is a Schedule 1 employer who employs more than 500 employees worldwide. (Cmplt. at ¶35.) As

---

[1] All calculations supporting the amount in controversy are based on the Complaint's allegations (along with other documents and supporting declarations as identified herein), assuming, without any admission, the truth of any of the allegations, and assuming liability (which is disputed) could be established. Likewise, these calculations are based on the putative class alleged in the Complaint and in no way indicate that such class actually exists or would meet the requirements set forth in Fed. R. Civ. P. 23. Hyatt expressly reserves the right to challenge Plaintiff's claims, class definition, and calculation of damages in all respects. However, for purposes of this Notice of Removal, Hyatt bases its calculations on the allegations, facts, and class definition contained in the Complaint as well as other documents identified herein.

NOTICE OF REMOVAL - 8

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue, Ste. 3000
Seattle, WA 98104
(206) 946-4910

such, Plaintiff alleges the hourly minimum wage for a Schedule 1 employer who pays toward employee medical benefits was $13.50 in 2017; $15.00 in 2018; $16.00 in 2019; and is $16.19 in 2020. (Cmplt. at ¶34.) Specifically, Plaintiff alleges "Plaintiff and Subclass Members were employed by Defendant in Seattle, but Defendant failed to pay their hourly rate at the established Seattle Minimum Wage rate, resulting in an underpayment that is the difference between the effective hourly Seattle Minimum Wage rate at the time they worked, and the hourly wage that they received from Defendant." (Cmplt. at ¶35.) Further, "[a]s a direct and proximate result of Defendant's violations and its willful intent to deprive Plaintiff and the Members of the Class and Subclass of wages owed," including in failing to pay the effective Seattle Minimum Wage established under Seattle's ordinance, "Plaintiff and the Members of the Class and Subclass are entitled to judgment for twice the amount of wages owed." (Cmplt. at ¶¶51-52.)

28.  During the relevant time period identified in the Complaint, Hyatt employed approximately 1,695 non-exempt employees at its hotels in Seattle, Washington. (McConnell Decl., ¶4.) Given the dates of service of the putative class members, these employees worked roughly 109,025 workweeks since February 11, 2020. (*Id.*)

29.  On behalf of himself and each member of the putative class, Plaintiff seeks an underpayment equal to "the difference between the effective hourly Seattle Minimum Wage rate at the time they worked, and the hourly wage that they received from Defendant," as well as liquidated damages that doubles each employee's underpayment. (Cmplt. at ¶¶35, 51-52.) Plaintiff does not plead the number of hours that he or putative class members worked on a weekly basis. Plaintiff also has not plead his hourly rate of pay or the hourly rate of pay of any other non-exempt employee. In order to formulate its calculations, Defendant has reviewed and used as the basis of its calculations the applicable base hourly rate (and corresponding timeline) for each of the putative class members during the relevant time period. (McConnell Decl., ¶5.) Assuming Plaintiff alleges a very conservative average workweek of forty hours (with no overtime), and assuming based on Plaintiff's allegations at Paragraph 34 that Hyatt is a

NOTICE OF REMOVAL - 9

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue, Ste. 3000
Seattle, WA 98104
(206) 946-4910

"Schedule 1 employer who pays toward employee medical benefits" and the applicable minimum wages were "$13.50 in 2017; $15.00 in 2018; $16.00 in 2019; and is $16.19 in 2020" (Cmplt. at ¶34), there were a total of 481 non-exempt employees whose base hourly rates were below the applicable minimum wage rate at any point during the corresponding calendar year. (McConnell Decl., ¶5.) For those 481 employees during the relevant time period, the amount of alleged underpayments plus double damages arising from Hyatt's allegedly-willful conduct Plaintiff seeks on behalf of the putative class for the relevant time period is at least $5,084,813.40 (*i.e.*, $ 252,374.40 in 2017; $ 868,666 in 2018; $ 3,342,441 in 2019; and $ 621,332 in 2020). (McConnell Decl., ¶5) These amounts were calculated as follows: for each non-exempt employee whose base hourly rate is below the applicable minimum wage rate for any part of the calendar year during the relevant time period, the difference between the applicable minimum wage rate and the employee's base hourly rate multiplied by 40 hours per week, multiplied by the number of workweeks the base rate allegedly was below the minimum wage, then multiplied by two for double damages, equals that employee's alleged amount in controversy; the calculations leading to the $5,084,813.40 amount in controversy for this claim were conducted for all putative class members in each calendar year in the relevant time period, as the minimum wage increased each year. (McConnell Decl., ¶5) Moreover, although the Complaint is not clear as to whether Plaintiff alleges that Hyatt paid adequate medical benefits to him and the putative class for purposes of determining the adequate minimum wage, the amount in controversy will be even higher if Plaintiff alleges medical benefits were not paid, in which case the higher minimum wages would apply, and the "underpayments" between the applicable minimum wage and employees' base hourly rate would be greater.

30.  **Alleged Unpaid Meal Period Breaks:** Plaintiff alleges that Defendant "failed to provide Plaintiff and Subclass Members with statutory meal…periods" under WAC 296-126-092(1), which provides "[e]mployees shall be allowed a meal period of at least thirty minutes which commences no less than two hours nor more than five hours from the beginning of the

NOTICE OF REMOVAL - 10

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue, Ste. 3000
Seattle, WA 98104
(206) 946-4910

1 shift. Meal periods shall be on the employer's time when the employee is required by the
2 employer to remain on duty on the premises or at a prescribed work site in the interest of the
3 employer." (Cmplt. at ¶16.) Specifically, Plaintiff alleges Hyatt "did not and does not provide
4 in-room servers, servers, and other 'front of the house' employees with … 30-minute meal
5 periods between the second and fifth hours of their shifts," throughout the class period of
6 February 11, 2017 through the present. (Cmplt. at ¶17.) Plaintiff alleges the "time pressure
7 nature of Plaintiff and the Subclass Members' work was such that they could not take statutory
8 meal…periods," and Defendant "had no policy or practice for Plaintiff and Subclass Members to
9 record missed…meal breaks and to get paid for them." (Cmplt. at ¶44.) Therefore, Plaintiff
10 alleges, "Defendant is liable to Plaintiff and the Class Members for compensation for time spent
11 on their miss meal…periods." (Cmplt. at ¶17.) Finally, "[a]s a direct and proximate result of
12 Defendant's violations and its willful intent to deprive Plaintiff and the Members of the Class
13 and Subclass of wages owed," including in failing to compensate Plaintiff and the Subclass for
14 missed meal periods, "Plaintiff and the Members of the Class and Subclass are entitled to
15 judgment for twice the amount of wages owed." (Cmplt. at ¶¶51-52.)

16       31.   Based on these allegations of a policy and practice of failing to provide meal
17 breaks, it is reasonable to assume that Plaintiff is alleging two meal break violations per
18 workweek. During the relevant time period identified in the Complaint, Defendant employed
19 approximately 766 non-exempt employees in one or more 33 distinct job positions reasonably
20 considered to be an "in-room server, server, (or any other similar 'front of the house' position)"
21 at one or more of its hotels in Seattle, Washington, as defined by Plaintiff's "Subclass."
22 (McConnell Decl. at ¶¶ 6-7.) These 776 employees in the "Subclass" worked approximately
23 44,842 workweeks during the relevant period. (McConnell Decl. at ¶ 7.) Given the dates of
24 service of the putative Subclass members and their respective hourly rates of pay (McConnell
25 Decl. at ¶ 7.), and assuming two meal break violations per week for each employee, the amount
26 of alleged unpaid meal break time Plaintiff seeks on behalf of the putative class (plus double

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue, Ste. 3000
Seattle, WA 98104
(206) 946-4910

damages arising from Hyatt's allegedly willful conduct) is **$1,379,643.00** (*i.e.*, each employee's base hourly rate of pay multiplied by 0.5 hours multiplied by two violations per week and then multiplied by two for double damages, multiplied by employee workweeks).

32.  **Alleged Unpaid Rest Period Breaks:** Plaintiff alleges that Defendant "failed to provide Plaintiff and Subclass Members with statutory rest…periods" under WAC 296-126-092(4), which provides "[e]mployees shall be allowed a rest period of not less than ten minutes, on the employer's time, for each four hours of working time…" (Cmplt. at ¶16.)  Specifically, Plaintiff alleges Hyatt "did not and does not provide in-room servers, servers, and other 'front of the house' employees with statutory ten-minute rest periods for every four hours of work…" throughout the class period of February 11, 2017 through the present. (Cmplt. at ¶17.)  Plaintiff alleges the "nature of Plaintiff and the Subclass workers' work, which was scheduled during mealtime 'rushes' was such that they could not take rest periods," and Defendant "had no policy or practice for Plaintiff and Subclass Members to record missed…rest periods, or to compensate for them." (Cmplt. at ¶17.)  Plaintiff further alleges the "time pressure nature of Plaintiff and the Subclass Members' work was such that they could not take statutory…rest periods." (Cmplt. at ¶44.)  Therefore, Plaintiff alleges, "Defendant is liable to Plaintiff and the Class Members for compensation for time spent on their missed…rest periods." (Cmplt. at ¶17.)  Finally, "[a]s a direct and proximate result of Defendant's violations and its willful intent to deprive Plaintiff and the Members of the Class and Subclass of wages owed," including in failing to compensate Plaintiff and the Subclass for missed rest periods, "Plaintiff and the Members of the Class and Subclass are entitled to judgment for twice the amount of wages owed." (Cmplt. at ¶¶51-52.)

33.  Based on these allegations of a policy and practice of failing to provide rest breaks, it is reasonable to assume that Plaintiff is alleging two rest break violations per workweek.  During the relevant time period identified in the Complaint, Defendant employed approximately 766 non-exempt employees in one or more 33 distinct job positions reasonably considered to be an "in-room server, server, (or any other similar 'front of the house' position)"

NOTICE OF REMOVAL - 12

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue, Ste. 3000
Seattle, WA 98104
(206) 946-4910

at one or more of its hotels in Seattle, Washington, as defined by Plaintiff's "Subclass." (McConnell Decl. at ¶¶ 6-7.) These employees in the "Subclass" worked approximately 44,842 workweeks during the relevant period. (McConnell Decl. at ¶ 7.) Given the dates of service of the putative Subclass members and their respective hourly rates of pay (McConnell Decl. at ¶ 7), and assuming two rest break violations per week for each employee (*i.e.* 10 minutes of paid time for each violation), the amount of alleged unpaid rest break time Plaintiff seeks on behalf of the putative class (plus double damages arising from Hyatt's allegedly willful conduct) is **$459,880.90** (*i.e.*, each employee's base hourly rate of pay multiplied by 10 minutes multiplied by two violations per week, and then multiplied by two for double damages, and then multiplied by employee workweeks).

34. **Attorneys' Fees:** The Complaint also alleges that Plaintiff and putative class members are entitled to recover attorneys' fees pursuant to RCW 49.48.030 and 49.52.070, and SMC 14.20.090. (Cmplt., Prayer for Relief at I.) (Ex. A, Prayer for Relief.) A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy. *Arias*, 936 F.3d at 927 (9th Cir. 2019) (confirming "attorneys' fees awarded under fee-shifting statutes … are included in the amount in controversy") (*quoting Fritz v. Swift Transp. Co. of Ariz., LLC*, 899 F. 3d 785, 794 (9th Cir. 2018)); *see also Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("[w]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy").

35. Based on the above calculations, the total amount in controversy based on the claims alleged in Plaintiff's Complaint is roughly **$6,924,337.30**, not including attorneys' fees ($5,084,813.40 in minimum wage violations and corresponding double damages; $1,379,643 in unpaid meal periods and corresponding double damages; and $459,880.90 in unpaid rest periods and corresponding double damages.)

NOTICE OF REMOVAL - 13

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue, Ste. 3000
Seattle, WA 98104
(206) 946-4910

36. In the class action context, courts have found that 25 percent of the aggregate amount in controversy is a benchmark for attorneys' fees award under the "percentage of fund" calculation and courts may depart from this benchmark when warranted. *See Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees are appropriately included in determining amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256-1257 (9th Cir. 2000); *Wren v. RGIS Inventory Specialists*, 2011 U.S. Dist. LEXIS 38667 at *78-84 (N.D. Cal. Apr. 1, 2011) (finding ample support for adjusting the 25% presumptive benchmark upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the total settlement payment was appropriate and reasonable in the case).

37. Using the benchmark of 25 percent of the total recovery, attorneys' fees on Plaintiffs' claims could be as high as **$1,731,084.32** ($6,924,337.30 multiplied by .25). This also does not factor in costs incurred for the litigation. Thus, although Hyatt denies Plaintiff's allegations that he or any putative class member is entitled to the relief sought in the Complaint, the total amount in controversy is approximately ***$8,655,421.62***, which easily exceeds the $5,000,000 threshold set forth in 28 U.S.C. section 1332(d)(2).

## **NOTICE OF REMOVAL**

38. A true and correct copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of Washington for the County of King, as required under 28 U.S.C. § 1446(d).

39. In compliance with 28 U.S.C. section 1446(a), Defendant has attached a copy of the state court papers served herein. *See* **Exhibits A, B, and C** (the Complaint, Notice of Service of Process, and Defendant's Notice of Appearance, respectively). No other pleadings have been served by the parties. (McFarland Decl. at ¶ 3).

40. By filing this Notice of Removal, Defendant does not waive any defenses available at law, in equity, or otherwise.

NOTICE OF REMOVAL - 14

SEYFARTH SHAW LLP
Attorneys at Law
999 Third Avenue, Ste. 3000
Seattle, WA 98104
(206) 946-4910

## CONCLUSION

41. Because diversity of citizenship exists, and the amount in controversy well exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28 U.S.C. section 1332(d)(2). Defendant respectfully requests that the above action pending before the Superior Court of the State of Washington for the County of King be removed to this Court.

DATED this 12th day of March, 2020.

SEYFARTH SHAW LLP
Attorneys for Defendant Hyatt Corporation

By: */s/ Helen M. McFarland*
Helen M. McFarland, WSBA 51012
999 Third Avenue, Ste. 3000
Seattle, WA 98104
P: (206) 946-4923
F: (206) 260-8839
hmcfarland@seyfarth.com

NOTICE OF REMOVAL - 15