HONORABLE ROBERT S. LASNIK
HONORABLE THERESA L. FRICKE

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| **ELI BICKERTON,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**HYATT CORPORATION**, a Delaware corporation, **HYATT CORPORATION DBA HYATT OLIVE 8**, a Delaware corporation, **HYATT CORPORATION DBA GRAND HYATT SEATTLE**, a Delaware corporation, and **DOES 1-25**, inclusive,<br><br>Defendants. | Case No.: 2:20-cv-00397-RSL-TLF<br><br><br>**PLAINTIFF'S <u>UNOPPOSED</u> MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br><br>NOTING DATE: SEPTEMBER 6, 2022<br><br><br>Without Oral Argument |

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 2:20-CV-00397-RSL-TLF
- i -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................... 1

II.     FACTUAL BACKGROUND ....................................................... 2

III.    PROCEDURAL BACKGROUND................................................. 2

IV.     THE PROPOSED SETTLEMENT TERMS ................................. 3

V.      ARGUMENT ........................................................................... 6

  A.    The Court Should Preliminarily Approve This Settlement Under FRCP 23(e).... 6

  B.    The Class Satisfies the Requirements of FRCP 23 for Conditional Certification. 6

    1.   FRCP 23(a) Requirements for Class Certification Have Been Met. ....................... 7

    2.   FRCP 23(b)(3) Requirements for Class Certification Have Been Met. ................... 8

  C.    The Settlement is Fair, Reasonable, and Adequate. .......................................... 9

    1.   The Settlement Amount is a Fair Compromise in Light of Risks and Uncertainties. ...................................................................................... 10

    2.   The Parties Sufficiently Investigated and Litigated this Matter to Allow Counsel and this Court to Conclude that the Settlement is Fair, Adequate, and Reasonable. ...................................................................... 17

    3.   The Settlement was the Product of Informed, Non-Collusive, and Arm's-Length Negotiations Between Experienced Counsel Whom Jointly Support the Settlement....................................................................... 18

    4.   The Proposed Notice Plan is Reasonable. ............................................ 18

VI.     THE REQUESTED ATTORNEYS' FEES, COSTS, AND CLASS
        REPRESENTATIVE PAYMENT ARE FAIR AND REASONABLE.......... 19

  A.    The Class Representative Payment is Reasonable. ................................... 20

VII.    THE COURT SHOULD APPOINT CPT GROUP, INC. AS SETTLEMENT
        ADMINISTRATOR ......................................................................... 21

VIII.   THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING......... 21

IX.     CONCLUSION ................................................................................ 21

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 2:20-CV-00397-RSL-TLF

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

- ii -

## CASES

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)..................................................................8

*Ayala v. Olsen Brothers Ranches, Inc.*, Case No. 17-2-01046-1, Wash. Super. Ct. Benton County (July 27, 2018)........................................................................................................17

*Berry v. Transdev Servs., Inc.*, 2019 WL 117997 (W.D. Wash. Jan. 7, 2019)...........................12

*Birnbaum & Delapina v. Junk Consulting Services, LLC*, Case No. 20-2-00351-4 KNT, Wash. Super. Ct. King County at Kent (Feb. 1, 2021)................................................................17

*Bowles v. Wash. Dep't of Ret. Sys.*, 121 Wn.2d 52 (Wash. 1993) ..............................................20

*Brady v. Autozone Stores, Inc.*, 188 Wn.2d 576 (Wash. 2017) ...................................................10

*Brady v. Autozone Stores, Inc.*, 2018 WL 3526724 (W.D. Wash. July 23, 2018) ............... 13-14

*Carlson v. Home Depot USA, Inc.*, 2021 U.S. Dist. LEXIS 194352 (W.D. Wash. Oct. 7, 2021).................................................................................................................................9

*Chavez v. Our Lady of Lourdes Hosp. at Pasco*, 190 Wn.2d 507 (Wash. 2018) ...................9, 11

*Churchill Village, L.L.C. v. Gen. Elc.*, 361 F.3d 566 (9th Cir. 2004) .........................................10

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) .................................................................18

*Garcia v. Frosty Ridge Orchards, LLC*, Case No. 17-2-00224-39, Wash. Super. Ct. Yakima County (Jan. 19, 2018) ......................................................................................................17

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................................. *passim*

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994)…. .................................................................20

*Hernandez et al., v. Great Western Pacific, Inc.*, King County Superior Court Case No. 18-2-08788-1 SEA (Sept. 19, 2019)…………………………………………………………..9

*Hill v. Garda CL Nw., Inc.*, 191 Wn.2d 554 (2018) ..................................................................15

*Hughes v. Microsoft Corp.*, No. C98-1646C, 2001 U.S. Dist. LEXIS 5976 (W.D. Wash. Mar. 26, 2001)..........................................................................................................................18

*In re Beef Indus. Antitrust Litig.*, 607 F.2d 167 (5th Cir. 1979)..................................................9

*In re Bluetooth Headset Prods. Liab.*, 654 F.3d 935 (9th Cir. 2011)..................................19, 20

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000)……………………………...16

*In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008)………………………...16

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) ........................................................10

*Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 U.S. Dist. LEXIS 83192 (E.D. Cal. Sept. 11, 2008) ................................................................................................18

*Manigo v. Time Warner Cable, Inc.*, 2017 WL 5149225 (C.D. Cal. 2017)…………………………………………………………………………………13

*McConnell v. Mothers Work, Inc.*, 131 Wn. App. 525 (2006) .....................................................9

*Mercury Interactive Corp.*, 618 F.3d 988 (9th Cir. 2010)………………………….…...19, 20

*Millican v. Seattle Tennis Club et al.*, King County Super. Ct. No. 20-2-05117-9 SEA (May 14, 2021)…………………………………………………………………………16

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) .........................................19

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 2:20-CV-00397-RSL-TLF

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

- iii -

*Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615 (9th Cir. 1982)......................................9

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989)...................................20

*Pellino v. Brink's, Inc.*, 164 Wn. App. 668 (Wash. Ct. App. 2011).....................................10, 11

*Perez-Hernandez v. Oasis Farms, Inc.*, Case No. 17-2-00749-5, Wash. Super. Ct. Benton County (Jan. 12, 2018) ......................................................................................................17

*Phillips Petroleum Co. v. Shutts,* 472 U.S. 797 (1985)..................................................................18

*Rannis v. Recchia,* 380 F. App'x 646 (9th Cir. 2010) ......................................................................7

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)…………………………...…16, 21

*Schilling v. Radio Holdings, Inc.,* 136 Wn.2d 152 (1998) ...........................................................15

*Selk v. Pioneers Mem'l Heathcare Dist.*, 159 F. Supp. 3d 1164 (S.D. Cal. 2016)………..……16

*Silber v. Mabon,* 18 F.3d 1449 (9th Cir. 1994)............................................................................19

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)......................................................20

*Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011) …………………………………………12

*Wingert v. Yellow Freight Sys., Inc.,* 146 Wn.2d 841 (Wash. 2002).........................................12

*Winkel v. JH Steak, LLC*, King County Super. Ct. No. 20-2-04853-4 SEA (Oct. 15, 2021) .....16

*Wren v. RGIS Inventory Specialists*, No. C–06–05778 JCS, 2011 U.S. Dist. LEXIS 38667 (N.D. Cal. April 1, 2011)................................................................................................10

*Young, Jr., v. Safelite Fulfillment, Inc.*, Case No. 2:19-cv-01027-JLR, Doc. #33 (W.D. Wash. Dec. 3, 2020)…………………………………………………………...…………17

## STATUTES

Revised Code of Washington § 49.12 ...................................................................................1, 2, 19

Revised Code of Washington § 49.46 .............................................................................1, 2, 11, 19

Revised Code of Washington § 49.52 .....................................................................1, 2, 11, 15, 19

Seattle Municipal Code § 14.19…………………………………………...……....……1, 2, 11

Seattle Municipal Code § 14.20…………………………………...……………...……1, 2, 11

Washington Annotated Code § 296-126-092 ......................................................................1, 2, 10

## RULES

Federal Rules of Civil Procedure 23 ................................................................................ *passim*

## TREATISES

Manual for Complex Litigation (4d ed. 2004) ..............................................................................6

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 2:20-CV-00397-RSL-TLF

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

- iv -

## I.    **INTRODUCTION**

Plaintiff Eli Bickerton ("Plaintiff") seeks preliminary approval of a $1,028,000 non-reversionary class action settlement of alleged wage and hour claims against Defendants Hyatt Corporation, Hyatt Corporation DBA Hyatt Olive 8, and Hyatt Corporation DBA Grand Hyatt Seattle ("Defendants" or "Hyatt"). This class action was brought on behalf of approximately 1,919 individuals who resided in Washington State and who were employed at a Hyatt hotel in Seattle, Washington, by one or more Released Parties on an hourly basis between February 11, 2017 through April 22, 2022 (the "Settlement Period" or "Class Period") (hereinafter the "Class or "Class Members"). Plaintiff alleges that Defendants failed to pay the Seattle minimum wage in violation of RCW 49.46.020 and SMC 14.19, *et seq*., failed to compensate for missed meal and rest periods in violation of RCW 49.12 and WAC 296-126-092; failed to pay wages due at established pay periods in violation of SMC 14.20.020; and willfully and intentionally withheld wages pursuant to RCW 49.52.050, .070. Defendants claimed in defense, among other defenses, that minimum wages were paid when service charges are included and that such charges are legally allowed to be included according to the Seattle Office of Labor Standards; that its meal and rest period policies were facially valid; and that individualized issues would predominate and the class was unlikely to be certified on the meal and rest period claims, including as to whether meal periods were voluntarily waived, and as to why breaks were either late or missed when that occurred. These defenses presented substantial risks of no recovery for Plaintiff and the putative class.

After this case was stayed for several months due to the COVID-19 pandemic, and an exchange of informal discovery and class data and contested but productive settlement discussions between Counsel for Plaintiff and Defendants (the "Parties") that took place through informed, arms-length, and non-collusive negotiations, including participating in two private mediation sessions with highly respected wage-and-hour mediator, Nancy Maisano (on November 30, 2021 and March 31, 2022), as well as subsequent negotiations via phone calls and email correspondence over a period of several weeks between April 2022 and May 2022, the Parties agreed to settle this action for approximately 25% of the maximum rest break and meal break wages allegedly owed to the Class Members during the Settlement Period, excluding double damages and interest. The

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 2:20-CV-00397-RSL-TLF
- 1 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

Settlement Agreement ("S.A.") is attached as **Exhibit 1** to the Declaration of Craig J. Ackermann ("CJA Decl."), filed herewith. The proposed Settlement Agreement satisfies all the criteria for preliminary settlement approval under Fed. R. Civ. P. ("FRCP") 23 and is fair, adequate, and reasonable. Defendants do not oppose Plaintiff's instant motion. Accordingly, Plaintiff requests that the Court: grant preliminary approval of the proposed Settlement; conditionally certify the Class; appoint Plaintiff and Plaintiff's Counsel as Class Representative and Class Counsel, respectively; approve the proposed notice plan; and approve deductions from the Total Settlement Amount ("TSA") pursuant to the Settlement.

## II.   FACTUAL BACKGROUND

During the Settlement Period, approximately 1,919 Washington-residents were employed on an hourly compensation basis at the Hyatt Olive 8, Grand Hyatt at Seattle, Hyatt Regency Seattle, and the Thompson Seattle hotels, all of which are located in Seattle, Washington. *Id.* ¶ 17.c. From February 11, 2017 through April 22, 2022 (the "Settlement Period" or "Class Period"), the Class Members were compensated on the same hourly compensation basis. *Id.* ¶ 17.b. Based on Plaintiff's counsel's review of Defendants' records, during the Settlement Period, Plaintiff estimates that the Class Members worked 3.9 shifts per week on average, the Class Members' average number of hours per shift was 7.9, and the Class Members worked a total of 472,785 shifts over 121,227 workweeks. *Id.* ¶ 17.d.

## III.   PROCEDURAL BACKGROUND

On February 11, 2020, Plaintiff filed his class action Complaint in the King County Superior Court alleging causes of action for Defendants': (1) failure to pay the Seattle minimum wage in violation of RCW 49.46.020 and SMC 14.19, *et seq*.; (2) failure to compensate for missed meal and rest periods in violation of RCW 49.12 and WAC 296-126-092; (3) failure to pay wages due at established pay periods in violation of SMC 14.20.020; and (4) double damages for Defendants' willful and intentional withholding of wages pursuant to RCW 49.52.050, 070. CJA Decl., ¶ 18. On March 12, 2020, Defendants filed their Notice of Removal of the action from the King County Superior Court to the United States District Court for the Western District of Washington. Dkt. No. 1. On April 27, 2020, the Parties jointly filed a stipulated motion to stay the case because Defendants

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 2:20-CV-00397-RSL-TLF

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

- 2 -

were experiencing operational disruptions as a result of the COVID-19 pandemic, which was granted by the Court on April 30, 2020 (Dkt. No. 21), and continued on November 13, 2020. Dkt. No. 23. On February 11, 2021, the Court issued its Class Discovery and Certification Scheduling Order (Dkt No. 25), and on September 23, 2021, pursuant to the Parties' stipulation, the Court vacated the February 11, 2021 Scheduling Order in order to permit the Parties to attend private mediation with Nancy Maisano on November 30, 2021. Dkt. No. 27.

In anticipation of mediation, Plaintiff sent a request for informal discovery and class data to Defendants' counsel, and between February 2021 and November 2021 (and subsequent to the parties' unsuccessful first mediation session in November 2021), Defendants' counsel provided Plaintiff's counsel with a set of responsive documents including, *inter alia*, Plaintiff's personnel file, wage statements, and Time Detail Sheets; Policies and Employee Handbooks applicable to the putative Class Members; compensation data for numerous sample class members;[1] class data regarding the total number of putative class members, the class members' average hourly rate of pay, and the total number of workweeks worked; and random samples of Time Detail Sheet data for putative class members during the Class Period. CJA Decl., ¶ 19. On November 30, 2021, the Parties attended mediation and were unable to reach a resolution, but the Parties confirmed their attendance for a second day of mediation, which took place on March 31, 2022. *Id.* At all times during the settlement discussions, the Class Members were represented by Plaintiff's counsel and Defendants were represented by their counsel. *Id.* After intensive, arm's-length negotiations that took place through two unsuccessful mediation sessions, as well as subsequent phone calls and email correspondence over a period of several weeks between April 2022 and July 2022, the Parties agreed to the terms of the long-form Settlement Agreement before this Court. *Id.* ¶ 20, **Exhibit 1**.

## IV. THE PROPOSED SETTLEMENT TERMS

<u>Total Settlement Amount</u> – Defendants will pay the non-reversionary Total Settlement

---

[1] Specifically, Defendants produced payroll and timekeeping records, including meal and rest break records embedded therein, for 55 Class Members and for over 13,350 total shifts. Plaintiff's counsel hired a third-party data analytics company to analyze the records and data and provided a detailed report regarding violation rates and Defendants' potential exposure in advance of the second mediation.

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 2:20-CV-00397-RSL-TLF

- 3 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

Amount ("TSA") of $1,028,000, which is inclusive of all of the following payments set forth in the Settlement Agreement: Plaintiff's Class Representative Payment ($15,000), Class Counsel's attorneys' fees of 25% of the TSA (i.e., $257,000) and up to $20,000 in actual litigation costs incurred, and the Settlement Administrator's Costs (estimated to be $20,000). S.A., ¶¶ 1.17, 7.2-7.4.[2] The Net Settlement Amount ("NSA") of approximately $716,000 is the amount remaining after all of the foregoing deductions, and it will be paid out to the Settlement Class Members without the need for Settlement Class Members to claim their pro-rata share. Each Settlement Class Member's share shall be calculated by first dividing his or her number of workweeks actually worked during the Settlement Period by the Total Settlement Class Member Workweeks. This calculation will result in a percentage figure for each Settlement Class Member (the "Percentage Figure"). The Percentage Figure will then be used to determine each Settlement Class Member's portion of the Net Settlement Amount by multiplying the Percentage Figure by the Net Settlement Amount. *Id.* ¶ 7.5.2.

Class Definition – The "Class Members" are "all individuals who resided in Washington State and who were employed at Hyatt Regency Seattle, Grand Hyatt Seattle, Hyatt at Olive 8 or Thompson Seattle by one or more Released Parties on an hourly basis, at any time from February 11, 2017 through April 22, 2022." *Id.* ¶ 1.7.

Checks Cashed Process – Class Members will not be required to file a claim to receive their share of the NSA. If any Class Members do not cash or deposit their checks within the 90-day Check Cashing Period, any amounts associated with those uncashed checks will be sent by the Settlement Administrator to the State of Washington with the associated name of the Class Member pursuant to Washington's Unclaimed Property Act. *Id.* ¶¶ 6.2, 7.5, 7.8.  If any Class Members opt-out of the Settlement, they shall not receive any Individual Settlement Payment and shall not be bound by the releases that the Settlement Agreement entails. *Id.* ¶ 6.2.2. Class Members will have the opportunity to correct any errors on his or her Share Form concerning the number of workweeks

---

[2] Defendants shall also pay any employer-side payroll taxes owing on the portion of the Total Settlement Amount allocated towards wages on top of and in addition to the Total Settlement Amount. S.A., ¶ 1.17.

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 2:20-CV-00397-RSL-TLF                    - 4 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

during the Settlement Period that was used to calculate their Individual Settlement Payment. *Id.* ¶ 6.1.

Class Counsel Award (i.e., Attorneys' Fees and Costs) – Class Counsel requests, and Defendants do not oppose, that the Court preliminarily approve their attorneys' fees in the amount of 25% of the TSA ($257,000) and litigation cost reimbursement (of up to $20,000.) *Id.* ¶¶ 1.6, 7.3.

Class Representative Service Award – Plaintiff requests the Court preliminarily approve a Class Representative Service Award of $15,000, which Defendants do not oppose. *Id.* ¶ 7.4.

Settlement Administration Costs – The Parties have selected CPT Group, Inc. ("CPT Group") to serve as the Settlement Administrator. CPT Group has administered thousands of wage and hour settlements, (see https://www.cptgroup.com/about-us/) and pursuant to the parties Settlement Agreement, CPT Group has provided a quote of under $20,000 to administer this Settlement. S.A., ¶ 7.2.

Class Notice – The proposed Class Notice fully informs the Class Members of the nature of the lawsuit and each Class Member's rights under the terms of the Settlement Agreement and applicable law, and includes, without limitation: (1) a detailed explanation of the case, including the basic contentions and denials of the parties; (2) a statement that the court will exclude the member from the Class if the member so requests by a specified date; (3) a procedure for the member to follow in requesting exclusion from the Class; (4) a statement that the judgment, whether favorable or not, will bind all members who do not request exclusion; and (5) a section that defines the Settlement Period, lists the workweeks worked during that period according to Defendants' records, calculates an estimated share of the Settlement for the member, and explains that Class Members do not need to take any action to receive their share of the Settlement. *See* S.A., **Exhibit 1**.

Tax Consequences of Settlement Payments – One-half (50%) of every Individual Settlement Payment will represent wages allegedly due and will be subject to required legal deductions and reported on a Form W-2. The other one-half (50%) of every Individual Settlement Payment will represent alleged penalties and interest and will be reflected on a Form 1099. *Id.* ¶ 7.7.

Scope of Release and Final Judgment – The release contemplated by the proposed

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 2:20-CV-00397-RSL-TLF                    - 5 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

Settlement corresponds to the operative Complaint, releasing all claims that were or could have been asserted based on the allegations of the Complaint against Defendants and the Released Parties during the Settlement Period. *Id.* ¶ 8.1. Plaintiff will enter a general release in exchange for his Class Representative Service Award. *Id.* ¶ 8.2. Upon final approval of the Settlement, Class Counsel will submit a proposed final judgment. *Id.* ¶¶ 9.2, 9.5.

## V.    ARGUMENT

### A.    The Court Should Preliminarily Approve This Settlement Under FRCP 23(e).

A certified class action (or a class proposed to be certified for purposes of settlement) may not be dismissed, compromised or settled without approval of the Court.  *See* FRCP 23(e). Proper review and approval of a class action settlement requires three steps: (1) preliminary approval of the proposed settlement after submission of a written motion; (2) dissemination of mailed and/or published notice of the settlement to all class members; and (3) a formal fairness hearing, or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented. *Manual for Complex Litigation* (4th ed. 2004), § 21.61. The decision to approve or reject a proposed settlement is committed to the sound discretion of the court and may be reversed only upon a strong showing of clear abuse of discretion. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

FRCP 23 requires that all class action settlements satisfy two primary prerequisites before a court may grant certification for purposes of preliminary approval: (1) that the settlement class meets the requirements for class certification if it has not yet been certified (FRCP 23(a) and (b); *Hanlon*, 150 F.3d at 1020); and (2) that the settlement is fair, reasonable, and adequate (FRCP 23(e)(2)).  Here, both requirements for preliminary approval are satisfied.

### B.    The Class Satisfies the Requirements of FRCP 23 for Conditional Certification.

FRCP 23(a) sets out prerequisites for class certification: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  FRCP 23(a)(1)-(4).  Furthermore, Rule 23(b)(3) provides that a class action seeking monetary relief may only be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 2:20-CV-00397-RSL-TLF
- 6 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FRCP 23(b)(3). These requirements are met here.

### 1. FRCP 23(a) Requirements for Class Certification Have Been Met.

#### i.    The Class is Sufficiently Numerous.

Numerosity demands that the class be large enough that joinder of all members be impracticable. FRCP 23(a)(1). Courts have routinely found numerosity satisfied with classes of at least forty (40) members. *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010). Here, numerosity is met because Defendants have indicated that there are approximately 1,919 members of the Class. CJA Decl., ¶ 17.c.

#### ii.    The Commonality Requirement is Satisfied.

Commonality for class certification concerns the existence of questions of law and/or fact common to the class and is "construed permissively." *Hanlon*, 150 F.3d at 1019. The common questions here relate to Defendants' uniform policies and/or practices relating to meal and rest periods, including but not limited to whether Defendants had compliant meal and rest period policies, whether the putative Class Members were able to take duty-free meal and rest periods that complied with Washington law, and whether Defendants lacked a policy to record and get paid for missed meal and rest periods. *Id.* ¶ 21.

#### iii.    Plaintiff's Claims Are Typical of Those of the Putative Class.

Typicality is met if the named Plaintiff's claims "are reasonably co-extensive with those of absent class member; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here, typicality is satisfied because Plaintiff's alleged claims are the same as claims brought by the Class: the named Plaintiff was employed at one of Defendants' Seattle hotels, on an hourly compensation basis, during the Settlement Period, he was subject to the same meal and rest period and compensation policies and procedures as the rest of the Class, he alleges that he incurred unpaid rest and meal period wages, and he seeks the same type of relief. *See* Declaration of Eli Bickerton ("Bickerton Decl."), ¶¶ 2-3.

///

///

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 2:20-CV-00397-RSL-TLF                    - 7 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

iv.    **Plaintiff and Class Counsel Will Fairly and Adequately Represent the Class.**

Adequacy permits class certification only if the "representative parties will fairly and adequately protect the interests of the class." FRCP 23(a)(4). This means that proposed class representatives and their counsel cannot have conflicts of interest with the class and must vigorously prosecute the action on behalf of the class. *Hanlon*, 150 F.3d at 1020. Neither Plaintiff nor his counsel have a conflict with any putative Class Member. CJA Decl., ¶ 3; Bickerton Decl., ¶ 4. In addition, Plaintiff's counsel has performed substantial work and diligently investigated and prosecuted this case to a successful conclusion. CJA Decl., ¶ 16. Plaintiff's counsel has significant experience litigating wage and hour class actions and have been certified by numerous state and federal courts as competent, adequate class counsel. *Id.* ¶¶ 4-15.

2.    **FRCP 23(b)(3) Requirements for Class Certification Have Been Met**.

Under Rule 23(b)(3), plaintiffs must demonstrate that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." The common questions raised in this action predominate over any individualized questions concerning the Class. Predominance tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). In other words, courts must determine whether the focus of the proposed class action will be on the actions and conduct of the defendants rather than the behavior of individual class members. *Hanlon*, 150 F.3d at 1022-23. Here, the common questions of whether there were compliant meal and rest period policies, whether the putative Class Members were able to take duty-free meal and rest periods that complied with Washington law, and whether Defendants lacked a policy to record and get paid for missed meal and rest periods, predominate over any potential individualized issues. CJA Decl., ¶ 21. Further, this class action would be a superior method of adjudication compared to a multitude of individual suits. To determine if the class approach is superior, courts consider: (1) the interest of class members in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 2:20-CV-00397-RSL-TLF
- 8 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

the class; (3) the desirability of concentrating the litigation in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. FRCP 23(b)(3)(A)-(D). Here, a class action device is preferable because the Class Members do not have a strong interest in controlling their individual claims, as the individual prosecution of the claims would be identical to and duplicative of the class action litigation. The use of the class action mechanism here would also efficiently resolve numerous identical claims at the same time while avoiding the waste of judicial resources and eliminating the possibility of conflicting decisions from repetitious litigation. Because there are no manageability issues presented by this proposed resolution of the Class' identical claims under Washington state law, a class action is the superior method for adjudicating the claims in this action.[3]

## C.  **The Settlement is Fair, Reasonable, and Adequate.**

In deciding whether to approve a proposed class action settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). In exercising their sound discretion to approve settlements, courts regularly consider whether the settlement is fair, non-collusive, and "reflects all the normal perils of litigation as well as the additional uncertainties inherent in complex class actions." *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 179-80 (5th Cir. 1979). Included in this analysis are considerations of "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004)

---

[3] Courts have certified similar unpaid meal and rest break claims in Washington State. *See e.g., Hernandez et al., v. Great Western Pacific, Inc.*, King County Superior Court Case No. 18-2-08788-1 SEA, Order Granting In Part Plaintiffs' Motion for Class Certification (Sept. 19, 2019) (certifying unpaid meal and rest break claims as to class members who did not sign arbitration agreements); *Chavez v. Our Lady of Lourdes Hosp. at Pasco*, 190 Wn.2d 507 (Wash. 2018) (certifying a class of hourly-paid nurse's claims for unpaid rest breaks and meal periods); *McConnell v. Mothers Work, Inc.*, 131 Wn. App. 525, 529-30 (2006) (noting the trial court certified the plaintiff sales associate's class claims for withheld rest breaks and meal breaks on behalf of classes of sales associates and store managers); *Carlson v. Home Depot USA, Inc.*, 2021 U.S. Dist. LEXIS 194352 (W.D. Wash. Oct. 7, 2021) (certifying unpaid meal break and rest break claims on behalf of hourly-paid Home Depot supervisors and specialists).

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 2:20-CV-00397-RSL-TLF

- 9 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

(citing *Hanlon*, 150 F.3d at 1026). Importantly, there is a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C–06–05778 JCS, 2011 U.S. Dist. LEXIS 38667, at *20 (N.D. Cal. April 1, 2011). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). Applying these factors to this case, the proposed Settlement is fair, reasonable, and adequate.

### 1. <u>The Settlement Amount is a Fair Compromise in Light of Risks and Uncertainties.</u>

#### a. <u>Plaintiff's Claims</u>

Plaintiff alleges that Class Members were not compensated for missed meal and rest periods, and that Class Members who also earned automatic service charge income were not paid the proper Seattle minimum wage for all hours worked. CJA Decl., ¶¶ 18, 21-22. Plaintiff's meal and rest period claims[4] allege that he and the Class Members were typically scheduled to work busy shifts during which there was no opportunity to take timely and/or regular meal and rest periods, and that their workplaces were regularly understaffed, so Class Members did not have the necessary coverage that would allow them to regularly take statutory meal and rests periods. *Id.* ¶ 21. Plaintiff also alleged that despite governing handbook policies stating that supervisors will schedule breaks and that employees must clock out for meal periods, in practice, there was no actual policy or practice of scheduling Plaintiff or Class Members' meal and/or rest periods, or to record and compensate for missed meal and/or rest periods. *Id. See also Pellino*, 164 Wn. App. at 690 (concluding that Washington law requires employers to compensate employees for missed meal periods); *Chavez v. Our Lady of Lourdes Hosp. at Pasco*, 415 P.3d 224, 230-31 (Wash. 2018)

---

[4] Pursuant to WAC 296-126-092(1), "[e]mployees shall be allowed a meal period of at least thirty minutes which commences no less than two hours nor more than five hours from the beginning of the shift. Meal periods shall be on the employer's time when the employee is required by the employer to remain on duty on the premises or at a prescribed work site in the interest of the employer." WAC 296-126-092(2) states that "No employee shall be required to work more than five consecutive hours without a meal period." WAC 296-126-092(4) provides that "[e]mployees shall be allowed a rest period of not less than ten minutes, on the employer's time, for each four hours of working time. Rest periods shall be scheduled as near as possible to the midpoint of the work period. No employee shall be required to work more than three hours without a rest period." Rest periods cannot be waived under Washington law. *See* Washington Dep't of Lab. and Industries, *Admin. Policy ES.C.6.1, Meal and Rest Periods for Nonagricultural Workers Age 18 and Over*, at p. 4 (Dec. 1, 2017). A plaintiff can establish a prima facie case for missed meal and/or rest periods by providing evidence that he did not receive a timely meal and/or rest period, and the burden then shifts to the employer to rebut this by showing no violation. *Brady v. Autozone Stores, Inc.*, 188 Wn.2d 576 (Wash. 2017) (citing *Pellino v. Brink's, Inc.*, 164 Wn. App. 668, 690 (Wash. Ct. App. 2011); WAC 296-126-092).

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 2:20-CV-00397-RSL-TLF                                   - 10 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

(holding that Washington law requires employers to compensate employees for missed rest periods, and noting that "the dominant and overriding issue common to all putative class members is whether [defendant] failed to ensure [class members] could take breaks and record missed breaks.").

Plaintiff further alleged that he and the Class Members who earned automatic service charge income were not paid at least the hourly minimum wage established under the Seattle Municipal Code (SMC) and Washington Minimum Wage Act (WMWA).[5] CJA Decl., ¶ 22. SMC 14.19.030 established the hourly minimum wage for Schedule 1 employers, SMC 14.19.065 makes it a violation for any employer to violate the Seattle minimum wage requirements established in SMC 14.19, and SMC 14.19.110.A establishes a private right of action for recovery of any unpaid minimum wages owed, along with reasonable attorneys' fees and costs, interest, and liquidated damages in an amount of up to twice the unpaid wages. Accordingly, Plaintiff alleged that he and the Class Members who were paid on an hourly basis and also earned service charges and/or tips were paid less than the applicable minimum wage since their hourly pay rates, excluding service charges and tips, did not meet the established hourly Seattle minimum wage rates, resulting in an underpayment. CJA Decl., ¶ 22. Plaintiff also alleged that he and the Class Members were not paid wages due at established pay periods in violation of SMC 14.20.020 (flowing from causes of action one and two), and finally, Plaintiff alleged Defendants may be liable under RCW 49.52.050 and 070 for double damages where the employer willfully, and with intent to deprive, withheld wages. See *Wingert v. Yellow Freight Sys., Inc.*, 146 Wn.2d 841, 847–51 (Wash. 2002). CJA Decl., ¶ 23.

### b.  Defendants' Defenses

Defendants denied the allegations in the Complaint, and maintained that they could not be held liable for the claims alleged by Plaintiff for several reasons. Most significantly, Defendants opposed class certification, and Plaintiff's counsel had to consider the risk that this Court would not certify a Class, leaving only Plaintiff's individual claims for adjudication and allowing no

---

[5] Pursuant to RCW 49.46.020(3), "an employer must pay to its employees: (a) all tips and gratuities; and (b) all service charges . . . . Tips and service charges paid to an employee are in addition to, and may not count towards, the employee's hourly minimum wage." Under RCW 49.46.090(1), "Any employer who pays any employee less than the amounts to which such employee is entitled under or by virtue of this chapter, shall be liable to such employee affected for the full amount due to such employee . . . and for costs and such reasonable attorney's fees as may be allowed by the court." Finally, pursuant to RCW 46.46.120, employers must pay to Washington employees the effective hourly minimum wage that is most favorable to such employees, including those laws and regulations established by local ordinances.

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 2:20-CV-00397-RSL-TLF
                                        - 11 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

recovery for the rest of the Class. CJA Decl., ¶ 25. Defendants argued vigorously that the policies and practices applicable to Class Members—as to both meal and rest breaks—differed between hotels, and that these differences would preclude class certification. *Id.* Defendants also argued that Plaintiff alleges no evidence of any company-wide course of conduct affecting the entire class with respect to his rest and meal breaks, and that no such company-wide behavior exists. *Id.* Moreover, Defendants argued that the very nature of Plaintiff's rest and meal break claims turns on the unique work circumstances of each individual hourly employee, and whether or not the nature of their work allowed them to take intermittent rest periods equivalent to ten minutes for each 4 hours or whether they had sufficient time to take meal breaks, since the nature of the work is vastly different from hotel to hotel and between the many hourly-paid positions held by Class Members. *Id.*[6] Defendants contended that the differing variety of departments and job positions under different managers and supervisors at different locations within the proposed class will inevitably require a location-by-location, position-by-position, if not an individual-by-individual, analysis as to whether each position and whether each person had ample opportunity to take rest and meal breaks, including whether individuals waived meal periods. *Id.*[7] While Plaintiff feels that the putative Class, or certain subclasses, would likely be certified if this matter had not been resolved, there are certainly risks associated with non-certification of the putative Class claims. *Id.* In considering these risks and others, the Parties agreed that Settlement was appropriate, and that the Settlement here is fair and reasonable.

Defendants also argued that each hotel has maintained lawful timekeeping and meal and rest period policies and practices for their hourly employees. CJA Decl., ¶ 26. Defendants argued that Plaintiff's meal and rest period allegations are not supported by common evidence that would render class certification appropriate—especially since each hotel implements and schedules meal

---

[6] *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (denying class certification, and holding that Rule 23 requires more than mere allegations that the proposed class "all suffered a violation of the same provision of law," but instead, "[t]heir claims must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

[7] *See Berry v. Transdev Servs., Inc.*, 2019 WL 117997, at *6 (W.D. Wash. Jan. 7, 2019) (denying plaintiff's motion for class certification of meal and rest periods, and finding that "[a]necdotal evidence regarding missed or incomplete meal breaks is not sufficient to establish the existence of a common practice" in support of certification).

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 2:20-CV-00397-RSL-TLF                - 12 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614 FAX (310) 277-0635

and rest periods for hourly employees in different ways depending on the specific job position, shift, department, and supervisor—and that their policies and practices are facially lawful and provide more protection to employees than required in Washington State. *Id.* Defendants asserted that Class Members received regular ten-minute rest breaks or intermittent breaks, because the nature of work in hotels inevitably creates predictable periods of sufficient length for hourly employees to rest through a block of 10 minutes or on an intermittent basis. *Id.* Defendants also contended that employees were provided 30-minute, uninterrupted meal breaks, and that it is well settled under Washington law that employees may waive meal breaks, and that if the case proceeded, they were confident that many hourly paid employees would testify that they knowingly and voluntarily waived their meal breaks. *Id.*[8] Defendants also argued that Plaintiff's assertion that violations occurred because he worked in a fast-paced or busy environment cannot support class certification. *See e.g.*, *Manigo v. Time Warner Cable, Inc.*, 2017 WL 5149225, at *4 (C.D. Cal. 2017) (class certification denied; "understaffing is not an unlawful practice;" "even assuming Plaintiffs could show that all putative class members worked in a dispatch center that was understaffed ... these circumstances do not establish that the class was uniformly denied the opportunity to take timely meal and rest breaks.").[9] Throughout negotiations, Defendants asserted that Class Members received meal and rest breaks in accordance with the law, and Defendants

---

[8] Defendants produced written meal period waivers signed by Class Members, and asserted that they have also permitted employees to verbally waive their right to a meal period throughout the Settlement Period, which they argued is lawful in Washington State. CJA Decl., ¶ 26. Defendants argued the Washington Supreme Court in *Brady* relied favorably on the Department of Labor & Industries' Administrative Policy regarding Meal and Rest Periods for Nonagricultural Workers Age 18 and Over, which stated -- and continues to state today -- that: "If an employee wishes to waive that meal period, the employer may agree to it...*While it is not required, the department recommends obtaining a written request from the employee(s) who chooses to waive the meal period.*" (emphasis added). See https://lni.wa.gov/workers-rights/_docs/esc6.1.pdf. Defendants also produced samples of break acknowledgement documents signed by Class Members, where employees acknowledged their understanding of their right to take meal and rest periods consistent with Washington law. CJA Decl., ¶ 26.

[9] Among other arguments, Defendants argued that under *Brady*, time records do not establish a class-wide basis for liability because they do not support a finding that an employee did not receive a compliant meal break, and that, as noted in the subsequent order affirming the denial of class certification in *Brady* following remand from the Washington Supreme Court, the district court stressed *Brady* still "did not describe what it means to 'receive' a timely meal break, or what evidence would show that an employee did not receive such a break." *Brady v. Autozone Stores, Inc.*, 2018 WL 3526724, at *4 (W.D. Wash. July 23, 2018) (denying class certification because Brady "still has not met his burden to show that common issues of law or fact predominate to make class action the superior vehicle"). Defendants contended that, for these reasons, "time-card data alone to indicate that a particular employee did not 'receive' a timely meal break simply because of a 5+ hour time punch on their [time] record...is simply not a reliable indicator of whether a meal break violation occurred, or of which individuals belong in the class." *Brady*, 2018 WL 3526724, at *4.=

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 2:20-CV-00397-RSL-TLF                                    - 13 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

objected to Plaintiff's rest break damage modeling, which assumed that Class Members missed and were not paid for every rest break they were owed during the Class Period. CJA Decl., ¶ 26. Defendants also argued that because paid rest periods are not recorded, Plaintiff cannot point to any evidence showing a rest period was actually missed, short, late, or interrupted, making Plaintiff's class claim for rest period violations hopelessly unmanageable. *Id.* Plaintiff's counsel had to take all of these meal and rest period defenses and risks into account in the settlement negotiations here.

Defendants further contend that service charges were lawfully included as part of the calculation of minimum wages. CJA Decl., ¶ 27. Defendants argued that, according to the Seattle Office of Labor Standards' own Questions and Answers regarding the Minimum Wage Ordinance, "[e]mployers can also count service charges paid to the employee toward Seattle minimum wage and minimum compensation requirements but only for the employee's earnings above the state minimum wage."[10] *Id.* Defendants argued that there is no claim or allegation that they pay an hourly wage below Washington State's minimum wage, or that Plaintiff or any other hourly employee was not paid the requisite minimum wage when the service charge is appropriately included in the minimum wage. *Id.* Finally, for those employees who are not eligible to receive a service charge, Defendants asserted that such employees are paid the requisite minimum wage in Seattle, and that Plaintiff's Seattle minimum wage claim will accordingly be dismissed on a summary judgment motion and has no settlement value. *Id.* Notably, the aforementioned Seattle Office of Labor Standards' guidance regarding service charges, i.e., that they may count towards the Seattle minimum wage as commission compensation, was first issued on April 1, 2021, over a year after Plaintiff filed this Action, and Plaintiff acknowledged that the guidance created serious risks related to the viability of his Seattle minimum wage claim. *Id.* ¶ 27, fn. 3. As a result, Plaintiff was extremely unlikely to prevail on the Seattle minimum wage claim, which had little, to no, settlement value.[11]

---

[10] *See* http://www.seattle.gov/Documents/Departments/LaborStandards/QA_MW_Final_21_0930.pdf (last updated 10/11/2021).
[11] Notably, Plaintiff's counsel has represented Washington employees in wage-and-hour actions alleging employers failed to properly disclose and/or pay service charges, and have alleged that there is a private right of action partially relying on the Washington Department of Labor and Industries' guidance as a primary source. Accordingly, it would be analogous and self-defeating in other contexts to attempt to show in court that applicable administrative guidance is not binding or "not the law."

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 2:20-CV-00397-RSL-TLF          - 14 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

Additionally, Plaintiff's counsel also had to consider potential collectability risks if the case proceeded through class certification, trial, and judgment. CJA Decl., ¶ 28. Plaintiff also considered that even if the class prevailed here, any recovery could be delayed for years by an appeal or by potential collection efforts. *Id.* In contrast, the Settlement eliminates all risk and provides monetary relief to Class Members immediately. *Id.*

Finally, Defendants asserted that Plaintiff would have difficulty proving Defendants willfully withheld wages, and thereby would not be entitled to double damages pursuant to RCW 49.52.070. CJA Decl., ¶ 29. Wage violations are not subject to double damages if they result from "carelessness or error," or if there was "a 'bona fide' dispute about whether all or part of the wages were really due." *Hill v. Garda CL Nw., Inc.*, 191 Wn.2d 554, 561 (2018). When there is a bona fide dispute over whether an employer owes wages, the employer's failure to pay owed wages is not willful. *Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 160 (1998). Defendants contend that their failure to pay owed wages was not willful, and that it was difficult to see how any potential overtime or rest or meal break violation could have arisen from anything other than inadvertence or carelessness on the part of Defendants' managers. CJA Decl., ¶ 29.

In considering these risks and others, this Settlement is an excellent result for the Class Members. The Parties agree the Settlement here is fair and reasonable.

c. **The TSA Represents a Substantial Recovery Considering the Risks and Defendants' Defenses.**

Plaintiff estimates that the $1,028,000 TSA represents approximately 25% of maximum rest break and meal break wages allegedly owed to the Class Members during the Settlement Period, excluding double damages and interest. *Id*. ¶¶ 24, 32. This is a substantial recovery considering the serious risks in this case and Defendants' numerous legal and factual defenses, especially considering the risks related to class certification and the risks related to the viability of Plaintiff's Seattle minimum wage claim in light of the Seattle Office of Labor Standards' 2021 administrative guidance. The results obtained here are well within the range of wage and hour class settlements that have been found fair and reasonable by other courts. *See In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement amounting to 9% of estimated total

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 2:20-CV-00397-RSL-TLF
- 15 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

damages); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (approving settlement amounting to 30% of the damages estimated by the class expert); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (approving settlement estimated to be worth between 1/6 and 1/2 of the plaintiffs' estimated loss); *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1175 (S.D. Cal. 2016) (recognizing that wage and hour settlement was fair and reasonable where "total settlement fund" represented between 26% to 50% of the best possible recovery"); *Winkel v. JH Steak, LLC*, King County Super. Ct. No. 20-2-04853-4 SEA (Oct. 15, 2021) (Hon. Sean P. O'Donnell) (granting final approval to a class action settlement resolving, inter alia, unpaid meal and rest break claims where the settlement amount represented approximately 24% of the maximum estimated damages); *Millican v. Seattle Tennis Club et al.*, King County Super. Ct. No. 20-2-05117-9 SEA (May 14, 2021) (Hon. Michael R. Scott) (granting final approval to a class action settlement resolving unpaid wage claims where the settlement amount represented approximately 31% of the estimated damages). CJA Decl., ¶ 33. In light of these comparable settlements, the Settlement in the present case is within the zone of reasonableness and worthy of preliminary approval.

Moreover, the amount recovered per Class Member here, with an estimated average Individual Settlement Payment of $373.11 per Class Member (i.e., $716,000 Net Settlement Amount divided by 1,919 Class Members), is a comparable average individual class member recovery to other wage-and-hour settlements that have been granted final approval in Washington. For example, in *Birnbaum & Delapina v. Junk Consulting Services, LLC*, the court granted final approval in a wage-and-hour class action settlement where the average recovery per class member was $194.63. *See* Order and Judgment Granting Final Approval of Class Action Settlement and Attorney's Fees and Costs, Case No. 20-2-00351-4 KNT, Wash. Super. Ct. King County at Kent (Feb. 1, 2021) (Judge Ketu Shah). In addition, in *Young, Jr., v. Safelite Fulfillment, Inc.*, Judge James L. Robart granted final approval to a class of 120 Washington workers alleging unpaid rest break claims where the average individual class member recovery was $320.83. *See* Order Granting Plaintiff's Motion for Final Approval of Class Action Settlement, Case No. 2:19-cv-01027-JLR, Dkt. #33 (W.D. Wash. Dec. 3, 2020). *See also Perez-Hernandez v. Oasis Farms, Inc.*, Order and Final Judgment Granting Final Approval of Class Action Settlement and Attorneys' Fees and Costs,

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 2:20-CV-00397-RSL-TLF
- 16 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614 FAX (310) 277-0635

Case No. 17-2-00749-5, Wash. Super. Ct. Benton County (Jan. 12, 2018) (Judge Sam Swanberg) (granting final approval to a class action settlement encompassing unpaid rest break claims where the average individual class member recovery was $176.37); *Garcia v. Frosty Ridge Orchards, LLC*, Order Granting Final Approval of Class Action Settlement and Attorneys' Fees and Costs and Judgment, Case No. 17-2-00224-39, Wash. Super. Ct. Yakima County (Jan. 19, 2018) (Judge Michael McCarthy) (granting final approval to a wage-and-hour class action settlement involving unpaid rest breaks where the average recovery was $263.90); and *Ayala v. Olsen Brothers Ranches, Inc.*, Case No. 17-2-01046-1, Wash. Super. Ct. Benton County (July 27, 2018) (unpaid rest break claim settlement with an average recovery of $215.46 per class member). CJA Decl., ¶ 34. The maximum Individual Settlement Award for Class Members who worked throughout the Settlement Period will be substantially higher than the average amount, and may be over $1,000.

These results, consistent with those of the instant case, demonstrate that the Settlement obtained here is fair and reasonable, especially when considering the serious risks Plaintiff faced in the immediate case. The highest amount for a settlement award here will be substantially higher for those Class Members who worked throughout the Settlement Period. *Id.* ¶ 34.

**2.   The Parties Sufficiently Investigated and Litigated this Matter to Allow Counsel and this Court to Conclude that the Settlement is Fair, Adequate, and Reasonable.**

The Parties engaged in an exchange of significant and substantive information relating to Class Members' unpaid wage claims, as detailed above, and were able to estimate class damages and assess the risks of further litigation. CJA Decl., ¶¶ 19, 24. It was only after the Parties thoroughly investigated and evaluated the strengths and weakness of the case through arm's length settlement negotiations, including participating in two mediation sessions and subsequent direct negotiations, that the Settlement was reached. *Id.* ¶¶ 20, 30-33. This is sufficient to support the Settlement. *See Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 U.S. Dist. LEXIS 83192, at *17 (E.D. Cal. Sept. 11, 2008) ("approval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases").

///

///

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 2:20-CV-00397-RSL-TLF
- 17 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

**3.  The Settlement was the Product of Informed, Non-Collusive, and Arm's-Length Negotiations Between Experienced Counsel Whom Jointly Support the Settlement.**

Courts routinely presume a settlement is fair where it is reached through arm's-length bargaining, as it was here.  *See Hughes v. Microsoft Corp.,* No. C98-1646C, 2001 U.S. Dist. LEXIS 5976, at *20 (W.D. Wash. Mar. 26, 2001) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel after meaningful discovery.") (citation omitted). Here, the Settlement was a product of intensive, adversarial negotiations between the Parties represented by skilled and experienced counsel, and which took place through two mediation sessions and numerous phone calls and email correspondence over a period of several weeks between April 2022 and May 2022. CJA Decl., ¶¶ 2, 4-15, 19-20. Notably, prior to and during the settlement discussions, the Parties ensured both sides were fully informed about the strengths and weaknesses of their respective positions. *Id*. ¶¶ 18-19, 21-29. These factors support a finding that the Settlement is fair, adequate, and reasonable.

**4.  The Proposed Notice Plan is Reasonable.**

In order to protect the rights of absent class members, courts must provide the best notice practicable of a potential class action settlement. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974). Procedural due process requires only notice reasonably calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). The Notice (Exhibit A to the Settlement Agreement) informs the Class Members about the terms of the Settlement, each Class Member's estimated Individual Settlement Payment, the procedure by which the Class Members may challenge the calculation, object to or opt out of the Settlement, and the date and location of the Final Approval Hearing. Accordingly, the Notice complies with the standards of reasonableness of a settlement notice disseminated under authority of the Court. In addition, the procedures surrounding the dissemination of the Notice ensure it will go out to Class Members in the manner best calculated to ensure that they are alerted to the terms of the Settlement and provided with the opportunity to respond to it. S.A., ¶¶ 5.4, 6.1-6.6.

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 2:20-CV-00397-RSL-TLF

- 18 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

## VI.     THE REQUESTED ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE PAYMENT ARE FAIR AND REASONABLE.

In class actions, the court may award reasonable attorneys' fees and costs that are authorized by law or the parties' agreement. See FRCP 23(h). Here, Plaintiff's counsel is entitled to recover their attorneys' fees and costs for their wage claims under Washington law. *See* RCW 49.12.150 (employee who recovers for violations of minimum wage is entitled to "costs and attorney's fees to be fixed by the court"); RCW 49.46.090(1) (employee who recovers for violations of minimum wage is entitled to "costs and such reasonable attorney's fees as may be allowed by the court"); RCW 49.52.070 (employer who willfully withholds wages "shall be liable in a civil action . . . for twice the amount of wages unlawfully [withheld] . . . together with costs of suit and a reasonable sum for attorney's fees"). The fee award requested by Class Counsel is the product of an agreement reached through arm's-length bargaining by counsel experienced in similar litigation, and is therefore fair and reasonable. CJA Decl., ¶¶ 19-20. Further, Defendants do not oppose this request. S.A., ¶ 7.3.

Where counsel to a class action seek fees from the common fund, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth Headset Prods. Liab.*, 654 F.3d 935, 942 (9th Cir. 2011) (citing *Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010)). Plaintiffs' counsel's request for fees is reasonable under either analysis.[12] Here, Plaintiff's counsel seek an award of 25% of the common fund for their attorneys' fees, a percentage well within—or lower than—the range of approved fee awards by Washington courts in similar cases. CJA Decl., ¶ 40. Moreover, an attorneys' fee award of 25% of the common fund is considered the "benchmark" fee award by both the Ninth Circuit and the Washington Supreme Court. *See In re Bluetooth Headset Prods. Liab.*, 654 F.3d at 942 ("courts typically calculate 25% of the [common] fund as the 'benchmark' for a reason-able fee award. . . .") (citations omitted); *Bowles v. Wash. Dep't of Ret. Sys.*, 121 Wn.2d 52, 72 (Wash. 1993) ("In common fund cases, the 'benchmark' award is 25 percent of the recovery obtained.") (citation

---

[12] Prior to final approval, Plaintiff's counsel will file a separate motion for an award of attorneys' fees and costs, addressing in greater detail the facts and law supporting their fee request in light of all of the relevant facts.

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 2:20-CV-00397-RSL-TLF
- 19 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614 FAX (310) 277-0635

omitted); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) ("'in common fund cases, the benchmark award is 25 percent of the recovery obtained,' with 20-30% as the usual range. Ninth Circuit cases echo this approach.") (citing *Bowles*, 121 Wn.2d at 72-73, and *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)).

Additionally, none of the *In re Bluetooth* "red flag" attorney collusion factors are present here. *See In re Bluetooth*, 654 F.3d at 947 (identifying three major signs of potential attorney collusion, including: "(1) when counsel receive a disproportionate distribution of the settlement . . . (2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds . . . and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund. . . .") (internal quotations and citations omitted). Here, the 25% common fund fee award ($257,000) requested by Class Counsel is not disproportionate to the $716,000 Net Settlement Amount, it is not separate or apart from class funds, and the Parties did not arrange for fees not awarded to revert to Defendants rather than be added to the class fund.

Plaintiff's Counsel further request reimbursement of litigation costs up to $20,000. *Id.* ¶ 42. "Attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). Plaintiff's counsel has reasonably incurred costs while litigating this case, and will continue to incur additional costs throughout the settlement approval process, and as discussed in footnote 10 herein, Plaintiff's counsel will file a separate motion for an award of attorneys' fees and costs prior to final approval.

### A.   The Class Representative Payment is Reasonable.

Here, the proposed Class Representative Payment of $15,000 to the named Plaintiff is fair in recognition of his substantial service to, and efforts on behalf of, the proposed Class. Bickerton Decl., ¶¶ 5-7. The $15,000 Class Representative Payment compares favorably with other class representative service awards approved by courts in Washington and elsewhere. CJA Decl., ¶ 35. Defendants do not oppose this request. S.A., ¶ 7.4. Moreover, class representative payments are recognized as valid by the Ninth Circuit. *See Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 958 (9th Cir. 2009) ("Incentive awards are fairly typical in class action cases. Such awards are

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 2:20-CV-00397-RSL-TLF
- 20 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

discretionary and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action. . . .") (internal citations omitted). The proposed Class Representative Payment of $15,000 for Plaintiff is therefore fair and reasonable, and should be preliminarily approved.

## VII.    THE COURT SHOULD APPOINT CPT GROUP, INC. AS SETTLEMENT ADMINISTRATOR

The Parties propose that the Court appoint CPT Group, Inc. to serve as the Settlement Administrator. CJA Decl., ¶ 43. CPT Group is experienced in administering class action settlements and pursuant to the Parties Settlement Agreement, CPT Group has provided a quote of under $20,000 to administer this Settlement. *Id.*

## VIII.    THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING.

The last step in the approval process is the formal hearing, whereby proponents of the Settlement may explain and describe its terms and conditions and offer argument in support of approval, and Class Members or their counsel may be heard in support of or in opposition to the Settlement. The Parties propose that the Court schedule a Final Approval Hearing of the Settlement, including Plaintiff's request for attorneys' fees, costs, and the Class Representative Payment, to occur in February, 2023.

## IX.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his motion for preliminary approval of his class action Settlement.

Respectfully submitted,

Date: September 6, 2022          By:      /s/Brian Denlinger
ACKERMANN & TILAJEF, P.C.
Craig J. Ackerman, WSBA No. 53330
Brian Denlinger, WSBA No. 53177
2602 North Proctor St., #205
Tacoma, WA 98406
Telephone: (253) 507-4619
Facsimile: (310) 277-0635
cja@ackermanntilajef.com
bd@ackermanntilajef.com

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 2:20-CV-00397-RSL-TLF                - 21 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

INDIA LIN BODIEN, ATTORNEY AT LAW
India Lin Bodien, WSBA No. 44898
Attorney for Plaintiff
2522 North Proctor St. #387
Tacoma, WA 98406
Telephone: (253) 212-7913
Facsimile: (253) 276-0081
india@indialinbodienlaw.com
*Attorneys for Plaintiff and the Class*

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 2:20-CV-00397-RSL-TLF
- 22 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635

## CERTIFICATE OF SERVICE

I, Jaclyn Blackwell, hereby certify and declare under penalty of perjury under the laws of the State of Washington that, on September 6, 2022, I caused to be electronically filed the foregoing Motion, along with the accompanying Declarations of Craig Ackermann and Eli Bickerton, and the Proposed Order, with the Clerk of the Court using the CM/ECF system that will send notification of such filing to the following:

India Lin Bodien, Esq.
Law Offices of India Bodien, Esq.
2522 North Proctor Street, #387
Tacoma, WA 98406-5338
Tel: (253) 212-7913
india@indialinbodienlaw.com

Craig J. Ackermann, Esq.
Brian Denlinger, Esq.
Ackermann & Tilajef, P.C.
1180 South Beverly Drive, Suite 610
Los Angeles, CA 90035
Tel: (310) 277-0614
cja@ackermanntilajef.com
bd@ackermanntilajef.com

Helen M. McFarland, WSBA #51012
SEYFARTH SHAW LLP
999 Third Avenue, Ste. 3000
Seattle, WA 98104
Phone:  (206) 946-4923
Email:  hmcfarland@seyfarth.com

Noah A. Finkel (admitted pro hac vice)
SEYFARTH SHAW LLP
233 S. Wacker Drive
Suite 8000
Chicago, Illinois 60603
Phone: (312) 460-5000
Email:  nfinkel@seyfarth.com

Ryan McCoy (admitted pro hac vice)
SEYFARTH SHAW LLP
560 Mission Street
Suite 3100
San Francisco, California 94105
Phone: (415) 397-2823
Email:  rmccoy@seyfarth.com

I further certify that I mailed a true and correct copy of the foregoing to the following non-CM/ECF participant: N/A

 /s/Jaclyn Blackwell
Jaclyn Blackwell
Office Manager
ACKERMANN & TILAJEF, P.C.

PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL
CASE NO. 2:20-CV-00397-RSL-TLF                - 23 -

ACKERMANN & TILAJEF, P.C.
2602 N. PROCTOR ST., SUITE 205
TACOMA, WASHINGTON 98406
TEL: (310) 277-0614  FAX (310) 277-0635